**BATEMAN**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **Cr. No.:** _24-20213 MSN-cgc_ |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **18 U.S.C. § 1343** |
| | ) | **18 U.S.C. § 1349** |
| | ) | **18 U.S.C. § 1512** |
| **RENATA WALTON,** | ) | **18 U.S.C. § 1957** |
| **AND** | ) | **26 U.S.C. § 7203** |
| **NICOLE JONES,** | ) | **26 U.S.C. § 7206** |
| **A/K/A NICOLE DICKERSON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# I N D I C T M E N T

**THE GRAND JURY CHARGES**:

## Overview

1.      On March 23, 2020, the President declared the COVID-19 pandemic a national emergency, as defined in Title 42, United States Code, Section 5122(a). Thereafter, the 116th United States Congress passed a number of laws aimed at alleviating the economic strain brought on by the pandemic, i.e. COVID-relief.

2.      Defendants Renata Walton and Nicole Jones are tax preparers at R&B Tax Express in Moscow, Tennessee, who through different COVID-relief fraud schemes defrauded and attempted to defraud the United States out of over $65,000,000 in the years 2020 through 2024.

1

**Tax Returns and COVID-19 Tax Credits**

3.     The Internal Revenue Service ("IRS") governs and administers federal income taxation.

4.     An individual tax return, Form 1040, U.S. Individual Income Tax Return ("Form 1040"), is an official report that calculates a taxpayer's total tax liability, often using financial information such as total income, and determines if there is an over or under payment of taxes. In the event of an overpayment, a taxpayer is entitled to a refund.

5.     A Schedule C Profit or Loss from Business ("Schedule C") is attached as an optional supplement to the Form 1040. The purpose of a Schedule C is to report income or loss from a business operated or a profession practiced as a sole proprietor. An activity qualifies as a business if the primary purpose for engaging in the activity is for income or profit and the taxpayer is involved in the activity with continuity and regularity. A return with a Schedule C loss reported will lower the taxable income on the Form 1040 tax return and reduce the tax amount.

6.     A Schedule H, Household Employment Taxes ("Schedule H") reports to the IRS household employment taxes owed by an individual that paid wages to a household employee(s) and whether the wages were subject to social security, Medicare or Federal Unemployment Tax Act ("FUTA") taxes, or if federal income taxes were withheld from the employee(s).  A Schedule H is filed with an individual's Form 1040, or by itself.

7.     The IRS gives several examples of household employees: butlers, caretakers, cooks, maids, nannies, private nurses, drivers, and cleaning people.  If an

individual has household employee(s) that are paid wages of $2,400 or more in 2022 and/or $2,600 or more in 2023, the employer should withhold social security and Medicare taxes from the employee(s), file Forms W-2 with the IRS, and file Forms W-3 to the Social Security Administration.

8.      The Families First Coronavirus Response Act provided for eligible employers to receive refundable tax credits for wages paid to employees while on sick leave to recover from any injury, disability, illness, or condition resulting from COVID-19 or wages paid to employees while on family leave to care for a family member who was injured, disabled, ill, or otherwise suffering from a condition due to COVID-19.  Together these credits are called the Sick and Family Leave Wage Credit ("SFLC").

9.      Employers were entitled to receive a dollar-for-dollar credit for qualified wages paid to an employee, plus allocable health plan expenses and the employer's share of Medicare taxes, while that employee was on sick leave resulting from COVID-19.  This credit was limited to up to ten days of sick leave per employee for the period ending March 31, 2021.  That resulted in a maximum credit of $5,110 per employee for that period.  The American Rescue Plan Act ("ARPA") provided a similar credit for the period April 1, 2021 through September 30, 2021 also with a maximum of $5,110 in credits per employee.

10.     Employers were entitled to receive a credit of up to two-thirds of the qualified wages paid to an employee while that employee was on family leave to care for a family member suffering from a condition resulting from COVID-19, plus allocable health plan expenses and the employer's share of Medicare taxes.  For the period ending March 31, 2021, this credit was limited to up to $200 per day for up to ten

3

weeks, resulting in a maximum eligible credit of $10,000 per employee.  The ARPA provided a similar credit for the period April 1, 2021, through September 30, 2021, and extended the length of family leave to twelve weeks, thereby raising the maximum eligible credit for that period to $12,000 per employee.

11.     Employers would claim the SFLC credits for their household employees on the Schedule H addendum to their Form 1040.

12.     Form 7202, Credits for Sick and Family Leave for Certain Self-employed Individuals is used to calculate refundable qualified sick and family leave equivalent credits if a taxpayer herself was unable to perform services as an eligible self-employed individual due to certain COVID-19 related circumstances between April 1, 2020 and September 30, 2021.

13.     To qualify for the credit, the taxpayer must have met one or more of the following: regularly carried on a trade or business, or was a partner in such a business; been subject to federal, state or local quarantine or isolation due to COVID-19; been advised to self-quarantine by a health professional due to COVID-19; cared for an individual or family member who was subject to the above mentioned COVID-19 quarantine concerns, among other restrictions. The credit is included on the self-employed individual's personal Form 1040 and reduces their tax liability. Any payments or credits that exceed the taxpayer's tax liability are issued in the form of a federal income tax refund to the taxpayer.

14.     The Coronavirus Aid, Relief, Taxpayer Certainty and Disaster Tax Relief Act of 2020 ("CARES Act") provided in part for an Employee Retention tax Credit ("ERC"). ERC was designed to encourage employers to continue to pay employees

during COVID-19. The ERC is a tax credit available to eligible employers with business operations that were partially or fully suspended due to governmental orders during March 12, 2020, but before January 1, 2022, saw significant decline in gross receipts as compared to pre-COVID-19 tax periods, or were adversely impacted by supply chain disruptions.

15.     ERC is equivalent up to 50% of qualified wages paid for the 2020 tax year and up to 70% for the 2021 tax year and is credited against applicable employment tax liability (social security tax and Medicare tax). If the credit exceeds the employment tax due, a refund is issued. ERC would have to be claimed on a business tax return filing, such as a Form 944, Employer's Annual Federal Tax Return ("Form 944").

16.     A Form 944 is reserved for small employers whose annual tax liability is $1,000 or less. To be eligible to file a Form 944, the employer must be notified by the IRS. Employers file this form to report income taxes, social security, and Medicare taxes withheld from employees' wages, among other items to the IRS. This form is also used to calculate and report the employer's portion of social security and Medicare tax they owe to the IRS. If the total deposits and credits exceed the employer's employment tax liability, the excess is issued to the employer in the form of a federal income tax refund. This form is filed in lieu of a Form 941, which is the tax return, filed quarterly, that businesses whose annual employment tax liability is over $1,000 file.

17.     An E-File Declaration for Employment Tax returns, Form 8453-EMP ("Form 8453-EMP"), is a form used to authenticate an electronic employment tax return, authorize an electronic return originator or an intermediate service provider to transmit an electronic employment tax return via a third party, and authorize an electronic funds

withdrawal for payment of federal taxes owed.  The Form 8453-EMP is required to be signed by an authorized individual of the taxpayer business who, in so doing, swears under penalty of perjury that the tax return was true, correct, and complete and consents to the electronic return originator or intermediate service provider submitting the employment tax return to the IRS.

### Paycheck Protection Program

18.    The CARES Act also provided COVID-19 relief in the form of authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").  In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

19.    To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, signed by an authorized representative of the business.  The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.  In the PPP loan application, the small business (through its authorized representative) was required to state its average monthly payroll expenses and its number of employees, among other things.  These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.  In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

20.    A PPP loan application was processed by a participating financial institution ("lender").  If a PPP loan application was approved, the participating lender

funded the PPP loan using its own monies, which were guaranteed by the Small

Business Association ("SBA").  Data from the application, including information about

the borrower, the total amount of the loan, and the listed number of employees, was

transmitted by the lender to the SBA in the course of processing the loan.

21.     PPP loan proceeds were required to be used by the business on certain

permissible expenses, including payroll costs, mortgage interest, rent, and utilities.

Under the applicable PPP rules and guidance, the interest and principal on the PPP

loan were eligible for forgiveness if the business was eligible for the PPP loan it

received, spent the loan proceeds on these permissible expense items within a

designated period, and used a certain portion of the loan proceeds for payroll expenses.

### Economic Injury Disaster Loan

22.     Another federal government program instituted in response to the COVID-

19 pandemic was an expansion of an existing disaster-related program called the

Economic Injury Disaster Loan ("EIDL") Program, which provides loan assistance for

small businesses and other eligible entities.  The CARES Act expanded eligibility for the

EIDL Program to assist business entities that suffered "substantial economic injury"

from COVID-19.

23.     EIDL loan funds were to be used for working capital and other normal

operating expenses by eligible businesses. Applicants for EIDL Program loans applied

through the SBA via an online portal.

### Defendants

24.     Defendant **RENATA WALTON** owned and operated R&B Tax Express,

located in Moscow, Tennessee. In her role as owner/operator, **WALTON** was

responsible for the operations of R&B Tax Express and personally prepared tax returns for both individual and business clients.

25.     **WALTON** has been a tax preparer since 2012 and teaches tax preparation classes. **WALTON**, also, sells her own tax preparation software called Pearson Tax Software.

26.     In addition to R&B Tax Express, **WALTON** purported to own and operate the following businesses:

> A.     R&B Financial Services;
>
> B.     Pearson Tax Software;
>
> C.     Pearson Fun and Bounce;
>
> D.     Beautique and Style; and
>
> E.     D&K Hair Collection.

27.     Defendant **NICOLE JONES** worked at R&B Tax Express and prepared tax returns for both individual and business clients.

28.     **JONES** purported to own and operate the following businesses:

> A.     Hair Save;
>
> B.     Brisk Carriers;
>
> C.     Woods Transportation;
>
> D.     Pearson Family Home Health Care; and
>
> E.     Bling my Jeans.

**The Multiple Schemes to Defraud**

29.     **WALTON and JONES** executed and attempted to execute a variety of schemes to defraud the United States by lying on various types of tax return

documents, as well as other government forms, for themselves and their clients in order to obtain monies under false pretenses connected to COVID relief.

30.     The tax return documents on which **WALTON and JONES** knowingly provided false information were Forms 944, Forms 1040, and attendant schedules to Forms 1040. **WALTON and JONES** would falsely provide on the tax forms that their clients were entitled to:

A.     Employee Retention Credits;

B.     Sick and Family Leave Credits;

C.     American Opportunity Education Credits; and

D.     Lifetime Learning Tax Credits;

when their clients were not entitled to either the credits at all or not entitled to the extent provided on the tax return documents prepared by **WALTON and JONES**.

31.     After entering the false values for the credits that their clients were not entitled to, **WALTON and JONES** would send wires in interstate commerce by submitting the fraudulent tax returns electronically to the IRS along with a Form 8453-EMP.

**Form 944 Employee Retention Credit Fraud Scheme**

32.     **WALTON and JONES** knowingly devised and participated in and intended to devise and participate in a scheme to defraud and obtain money from the United States by means of materially false and fraudulent pretenses, representations, and promises, using interstate wires.

A.  **WALTON—and JONES** by virtue of her association with Walton and R&B Tax Express—had clients who trusted them because of their pre-existing tax

9

preparer-client relationships, because of **WALTON'S** status as proprietor of Pearson

Tax Software, and because of **WALTON'S** reputation as a tax preparation teacher;

   B. By virtue of **WALTON'S and JONES'** relationship with their clients,

they were aware of which of their clients had small businesses;

   C. **WALTON and JONES** would contact their tax clients who had

small businesses and ask them if they were interested in "grant" money that was

available to them;

   D. It was part of the scheme that **WALTON and JONES** would falsely

represent that their clients were eligible for the money, without explaining what the

money was for, where the money was from, or the eligibility requirements of ERC;

   E. It was further part of the scheme that **WALTON and JONES** would

prepare Forms 944 for their clients, many of whom were ineligible to file Forms 944,

with false information, to include,

   i.  ERC credits that the businesses were not entitled to,

   ii. Substantial and fictious wage amounts, and

   iii. Claims for a refund;

   F. The Forms 944 prepared by **WALTON and JONES** were blank

except for the business identifying information, employee wage amount, ERC line items,

and refund amount;

   G. Further, the Forms 944 included no federal income, medical, or

social security withholdings and no tax liability;

   H. The information listed in the Forms 944 was material because the

refund amount was dependent on it;

I.    It was further part of the scheme that **WALTON and JONES** would transmit the Forms 944 in interstate commerce by means of wires, that is they would submit the Forms 944 on a website called Zenwork Tax1099, whose servers were located in the States of Oregon and Virginia;

J.    **WALTON and JONES** would receive confirmation emails back from Zenwork after each Form 944 was filed;

K.    It was further part of the scheme that the small business clients would receive U.S. Treasury checks based on the false information provided on the Forms 944, often in excess of $100,000.

L.    After receiving their fraudulent refund, the small business clients would then pay **WALTON and JONES** a fee, normally $15,000;

M.    In order to avoid detection of the scheme, neither **WALTON nor JONES** filed a tax return for tax period 2022 nor did they pay income tax for that period.

N.    Beginning in early 2024, **WALTON and JONES** began sending their clients pre-drafted letters, in the names of their clients, for them to then send on to the IRS. These letters included false information that was meant to undermine the IRS' investigation of **WALTON'S and JONES'** ERC scheme.

O.    As a part of the Form 944 Employee Retention Credit scheme, in total, **WALTON and JONES** filed fraudulent Forms 944 seeking in excess of $32,000,000 in tax refunds from the United States Treasury.

33.    **WALTON'S and JONES'** clients would also receive significant funds from the federal government for fraudulent 1040 tax returns and PPP loan applications that **WALTON and JONES** filed on their behalf. After receiving these funds from the federal

government, **WALTON'S and JONES'** clients would pay **WALTON and JONES** large sums of money, often in the form of cashier's checks.

34.    **WALTON** was put on notice that the federal government was investigating her for tax preparation fraud in January 2023, yet she continued to file fraudulent tax returns. **JONES** was put on notice that the federal government was investigating her for tax preparation fraud in May 2024, yet she also continued to file fraudulent tax returns

35.    Beginning in early 2024, **WALTON** encouraged her tax clients not to speak with IRS agents.

## COUNT 1 – CONSPIRACY TO COMMIT WIRE FRAUD

36.    Paragraphs 1 through 35 are realleged and incorporated by reference as though fully set forth herein.

37.    From on or about March 1, 2022 to at least on or about August 31, 2023, in the Western District of Tennessee and elsewhere, the defendants,

**RENATA WALTON
AND
NICOLE JONES**

did knowingly and willfully conspire and agree with each other and others known and unknown to the grand jury to commit the offense of Wire Fraud under 18 U.S.C. § 1343, by knowingly devising and participating in and intending to devise and participate in a scheme to defraud and obtain money from the United States by means of materially false and fraudulent pretenses, representations, and promises, using the transmission of wires, as described in paragraph 32, all in violation of 18 U.S.C. § 1349.

## COUNTS 2-16 – WIRE FRAUD

38.    Paragraphs 1 through 35 are realleged and incorporated by reference as though fully set forth herein.

39.    Between on or about March 1, 2022, and on or about February 1, 2023, in the Western District of Tennessee and elsewhere, being aided and abetted by individuals known and unknown to the grand jury,

### RENATA WALTON

knowingly devised and participated in and intended to devise and participate in a scheme to defraud and to obtain money from the federal government by means of materially false and fraudulent pretenses, representations, and promises, by the sending of wires in interstate commerce as provided below, in order to generate erroneous tax refunds for both herself and her clients who in turn paid fees to **WALTON**

| Count # | Date | Taxpayer | Tax Period | Wire Transmission |
|---------|------|----------|-----------|-------------------|
| 2 | 3/24/2022 | Pearson Fun & Bounce | 2020 | Form 944 claiming a $31,605 refund |
| 3 | 3/24/2022 | D&K Hair Collection | 2021 | Form 944 claiming a $129,661.00 refund |
| 4 | 3/24/2022 | Pearson Tax Software | 2021 | Form 944 claiming a $61,188.40 refund |
| 5 | 3/24/2022 | Beautique & Style | 2021 | Form 944 claiming a $99,658.30 refund |
| 6 | 3/24/2022 | R&B Financial Services | 2021 | Form 944 claiming a $92,616.30 refund |
| 7 | 5/4/2022 | RENATA WALTON DBA R&B Tax Express | 2020 | Form 944 claiming a $189,281.50 refund |
| 8 | 6/22/2022 | R&B Financial Services | 2020 | Form 944 claiming a $144,781.50 refund |
| 9 | 7/14/2022 | B.M.C.C. | 2021 | Form 944 claiming a $137,790.10 refund |

13

| 10 | 7/14/2022 | J.O.T.C. | 2021 | Form 944 claiming a $139,232.80 refund |
| 11 | 7/14/2022 | M.F.Y. | 2020 | Form 944 claiming a $99,928.10 refund |
| 12 | 7/14/2022 | M.F.Y. | 2021 | Form 944 claiming a $137,827.20 refund |
| 13 | 7/26/2022 | M.K. | 2021 | Form 944 claiming a $139,121.67 refund |
| 14 | 8/17/2022 | L.S.PS. | 2020 | Form 944 claiming a $127,717.80 refund |
| 15 | 9/21/2022 | J.O.T.C. | 2020 | Form 944 claiming a $129,481 refund |
| 16 | 9/21/2022 | M.K. | 2020 | Form 944 claiming a $151,284.50 refund |

all in violation of 18 U.S.C. § 1343.

## COUNTS 17-21
### Aiding and Assisting in the Preparation of False Tax Returns

40.    Paragraphs 1 through 35 are realleged and incorporated by reference as though fully set forth herein.

41.    Between on or about February 1, 2020, and on or about May 1, 2024, in the Western District of Tennessee and elsewhere, being aided and abetted by individuals known and unknown to the grand jury, the defendant,

**RENATA WALTON**

did willfully aid and assist in, procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of Form 1040 documents for the taxpayers and tax periods specified below. The documents were false and fraudulent as to material matters, in that they represented that the taxpayers were entitled, under the provisions of the Internal Revenue laws, to claim sick and family leave credits, amongst other items, that they were not entitled to; whereas defendant WALTON then and there

14

knew the taxpayers were not entitled to claim those items that Walton included on their

tax returns, as described below,

| Count # | Date | Taxpayer | Tax Period | Falsified Items |
|---|---|---|---|---|
| 17 | 2/10/2022 | T.A. | 2021 | Refund claim of $21,348 and SFLC credits on Form 7202 |
| 18 | 3/24/2022 | C.W. | 2021 | Refund claim of $5,044 and SFLC credits on Form 7202 |
| 19 | 5/6/2022 | E.S. | 2020 | Refund claim of $7,295 and SFLC credits on Form 7202 |
| 20 | 1/30/2024 | J.L. | 2023 | Refund claim of $17,500 and SFLC credits on Schedule H |
| 21 | 2/12/2024 | C.T. | 2023 | Refund claim of $16,482 and SFLC credits on Schedule H |

all in violation of 26 U.S.C. 7206(2).

## COUNTS 22-26 – WIRE FRAUD

42.     Paragraphs 1 through 35 are realleged and incorporated by reference as

though fully set forth herein.

43.     Between on or about January 1, 2021 and on or about May 1, 2021, in the

Western District of Tennessee and elsewhere, being aided and abetted by individuals

known and unknown to the grand jury, the defendant,

**RENATA WALTON**

knowingly devised and participated in and intended to devise and participate in a

scheme to defraud and to obtain money from the federal government by means of

materially false and fraudulent pretenses, representations, and promises, by the

sending of wires in interstate commerce as provided below, in order to generate PPP

loans for both herself and her clients who in turn paid fees to **WALTON**,

| Count # | Date | Wire Transmission |
|---|---|---|
|  |  |  |

| 22 | 1/8/2021 | PPP loan application for loan # 2218267200 for R&B Tax Express claiming $20,800. |
| 23 | 1/21/2021 | PPP loan application for loan # 3267528410 for T. and T. E. claiming $22,600. |
| 24 | 2/22/2021 | PPP loan application for loan # 4952998501 for B.V.L.H.E. for $20,833. |
| 25 | 4/27/2021 | PPP loan application for loan # 3673278903 for A.C. claiming $20,833.00. |
| 26 | 4/28/2021 | PPP loan application for loan # 6099648905 for N.G. and M. claiming $20,833. |

all in violation of 18 U.S.C. § 1343.

## COUNTS 27-28 – WIRE FRAUD

44.     Paragraphs 1 through 35 are realleged and incorporated by reference as though fully set forth herein.

45.     Between on or about March 1, 2020, and on or about March 1, 2022, in the Western District of Tennessee and elsewhere, being aided and abetted by individuals known and unknown to the grand jury, the defendant,

**RENATA WALTON**

knowingly devised and participated in and intended to devise and participate in a scheme to defraud and to obtain money from the federal government by means of materially false and fraudulent pretenses, representations, and promises, by the sending of wires in interstate commerce, in order to generate funds from EIDL loans for herself,

| Count # | Date | Wire Transmission |
|---|---|---|
| 27 | 4/3/2020 | EIDL loan application #3301802703 for Pearson Bounce and Fun claiming $10,000 |
| 28 | 2/12/2022 | EIDL loan application #3318021569 for R&B Financial Service LLC claiming $122,500 |

all in violation of 18 U.S.C. § 1343.

## COUNT 29 – OBSTRUCTION OF JUSTICE

46.    Paragraphs 1 through 35 are realleged and incorporated by reference as though fully set forth herein.

47.    Between on or about January 1, 2024 and on or about July 31, 2024, in the Western District of Tennessee, the defendant,

**RENATA WALTON**

did corruptly attempt to influence, obstruct, and impede the foreseeable federal criminal prosecution of her tax preparation activities, an official proceeding, by drafting, and causing to be drafted, documents with false information, and sending said documents to her clients, for them to file with the IRS, such false information including:

> a.  that the clients entered legitimate business wages on their Forms 944 for purposes of the ERC;
>
> b.  that the clients understand the ERC and meet all qualifications for the ERC; and
>
> c.  that the client discussed with R&B Financial all wages paid out for purposes of ERC in 2020 and 2021;

all in violation of 18 U.S.C. § 1512(c).

## COUNTS 30-37 – WIRE FRAUD

48.    Paragraphs 1 through 35 are realleged and incorporated by reference as though fully set forth herein.

49.    Between on or about July 1, 2022, and on or about January 1, 2023, in the

Western District of Tennessee and elsewhere, being aided and abetted by individuals

known and unknown to the grand jury,

**NICOLE JONES**

knowingly devised and participated in and intended to devise and participate in a

scheme to defraud and to obtain money from the federal government by means of

materially false and fraudulent pretenses, representations, and promises, by the

sending of wires in interstate commerce as provided below, in order to generate

erroneous tax refunds for both herself and her clients who in turn paid fees to **JONES**,

| Count # | Date | Taxpayer | Tax Period | Wire Transmission |
|---|---|---|---|---|
| **30** | 9/16/2022 | F.L.T. | 2021 | Form 944 claiming a $134,236 refund |
| **31** | 9/22/2022 | C.C.S. | 2021 | Form 944 claiming a $132,273.40 refund |
| **32** | 10/16/2022 | C.C.S. | 2020 | Form 944 claiming a $136,685 refund |
| **33** | 10/16/2022 | F.L.T. | 2020 | Form 944 claiming a $167,302.50 refund |
| **34** | 10/24/2022 | C.P. | 2021 | Form 944 claiming a $160,687.80 refund |
| **35** | 10/30/2022 | C.P. | 2020 | Form 944 claiming a $122,665 refund |
| **36** | 10/30/2022 | C.J. | 2020 | Form 944 claiming a $183,395 refund |
| **37** | 12/14/2022 | Brisk Carriers | 2020 | Form 944 claiming a $177,065 refund |

all in violation of 18 U.S.C. § 1343.

**COUNTS 38-39**
**Aiding and Assisting in the Preparation of False Tax Returns**

50.    Paragraphs 1 through 35 are realleged and incorporated by reference as

though fully set forth herein.

51.    Between on or about February 1, 2022, and on or about April 1, 2023, in the Western District of Tennessee and elsewhere, being aided and abetted by individuals known and unknown to the grand jury, the defendant,

**NICOLE JONES**

did willfully aid and assist in, procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of Form 1040 documents for the taxpayers and tax periods specified below. The documents were false and fraudulent as to material matters, in that they represented that the taxpayers were entitled, under the provisions of the Internal Revenue laws, to claim sick and family leave credits, amongst other items, that they were not entitled to; whereas defendant **JONES** then and there knew the taxpayers were not entitled to claim those items that **JONES** included on their tax returns, as described below,

| Count # | Date | Taxpayer | Tax Period | Falsified Items |
|---|---|---|---|---|
| **38** | 2/17/2022 | N.L. | 2021 | Refund claim of $15,726 and SFLC credits on Form 7202 |
| **39** | 3/9/2023 | M.H. and P.H. | 2022 | Refund claim of $1,114 and SFLC credits on Schedule H |

all in violation of 26 U.S.C. 7206(2).

## COUNTS 40-48 – MONEY LAUNDERING

52.    Paragraphs 1 through 35 are realleged and incorporated by reference as though fully set forth herein.

53.    On or about the dates listed below, in the Western District of Tennessee, and elsewhere,

**RENATA WALTON**

did knowingly engage and attempt to engage in monetary transactions by, through, and

to a financial institution, affecting interstate commerce, in criminally derived property of

a value greater than $10,000, that is, the depositing of cashier's checks in "The Bank" of

Fayette County, such property having been derived from a specified unlawful activity,

that is, acts of wire fraud under Title 18 U.S. Code, Section 1343, as described in the

chart below,

| Count # | Date | Transaction |
|---------|------|-------------|
| 40 | 8/25/2022 | Deposited a $15,000 cashier's check from J.O.T.C. for preparing Form 944 for tax period 2021 |
| 41 | 8/25/2022 | Deposited a $15,000 cashier's check from B.M.C.C. for preparing Form 944 for tax period 2021 |
| 42 | 9/6/2022 | Deposited a $30,000 cashier's check from M.F.Y. for preparing Form 944 for tax period 2020 |
| 43 | 9/19/2022 | Deposited a $15,000 cashier's check from T.L.S. for preparing Form 944 for tax period 2021 |
| 44 | 9/29/2022 | Deposited a $15,000 cashier's check from B.M.C.C. for preparing Form 944 for tax period 2020 |
| 45 | 9/29/2022 | Deposited a $15,000 cashier's check from A.L.S.R. for preparing Form 944 for tax period 2021 |
| 46 | 11/28/2022 | Deposited a $10,100 from H.H.R. for preparing Form 944 for tax period 2021 |
| 47 | 12/1/2022 | Deposited a $15,000 from G.C. for preparing Form 944 for tax period 2021 |
| 48 | 12/9/2022 | Deposited a $15,000 cashier's check from T.L.S. for preparing Form 944 for tax period 2020 |

all in violation of 18 U.S.C. § 1957.

## COUNTS 49-51 –  MONEY LAUNDERING

54.    Paragraphs 1 through 35 are realleged and incorporated by reference as

though fully set forth herein.

20

55.    On or about the dates listed below, in the Western District of Tennessee, and elsewhere, the defendant,

**NICOLE JONES**

did knowingly engage and attempt to engage in monetary transactions by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the depositing of cashier's checks into Renasant Bank, such property having been derived from a specified unlawful activity, that is, multiple acts of wire fraud under Title 18 U.S. Code, Section 1343, as described in the chart below,

| Count # | Date | Transaction |
|---------|------|-------------|
| 49 | 11/2/2022 | Deposited $15,000 cashier's check from F.L.T. for preparing Form 944 for tax period 2021 |
| 50 | 11/16/2022 | Deposited $15,000 cashier's check from C.C.S for preparing Form 944 for tax period 2021 |
| 51 | 7/19/2023 | Deposited $15,000 cashier's check from F.L.T for preparing Form 944 for tax year 2020 |

all in violation of 18 U.S.C. § 1957.

## COUNT 52 – FAILURE TO FILE

56.    Paragraphs 1 through 35 are realleged and incorporated by reference as though fully set forth herein.

57.    During Calendar Year 2022, the defendant,

**RENATA WALTON**

in the Western District of Tennessee, had and received gross income in such an amount that Walton was required by law, following the close of that calendar year, and on or before October 16, 2023, on account of Walton's requesting an extension, to make an income tax return to the person assigned to receive returns at the local office

of the IRS in the Western District of Tennessee, or at the local office of the IRS in the

Northern District of Mississippi, or to another proper officer of the United States, stating

specifically the items of her gross income and any deductions and credits to which she

was entitled; well knowing and believing the foregoing, Walton, did willfully fail to make

an income tax return;

all in violation of 26 U.S.C. § 7203.

<u>**COUNT 53 – FAILURE TO FILE**</u>

58.    Paragraphs 1 through 35 are realleged and incorporated by reference as

though fully set forth herein.

59.    During Calendar Year 2022, the defendant,

**NICOLE JONES**

in the Western District of Tennessee, had and received gross income in such an amount

that Jones was required by law, following the close of that calendar year, and on or

before April 17, 2023, to make an income tax return to the person assigned to receive

returns at the local office of the IRS in the Western District of Tennessee, or at the local

office of the IRS in the Northern District of Mississippi, or to another proper officer of the

United States, stating specifically the items of her gross income and any deductions and

credits to which she was entitled; well knowing and believing the foregoing, Jones, did

willfully fail to make an income tax return;

all in violation of 26 U.S.C. § 7203.

## NOTICE OF FORFEITURE ALLEGATIONS

### 1343, 1349 COUNTS

Upon conviction of Counts 1-16 and 22-28 of this Indictment, the defendant, **RENATA WALTON**, shall forfeit to the United States, under Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

### 1343, 1349 COUNTS

Upon conviction of Counts 1 and 30-37, of this Indictment, the defendant, **NICOLE JONES**, shall forfeit to the United States, under Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

### 1512(c) COUNT

Upon conviction of Count 29, of this Indictment, the defendant, **RENATA WALTON**, shall forfeit to the United States, under Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

### 1957 COUNTS

Upon conviction of Counts 40-48, of this Indictment, the defendant, **RENATA WALTON**, shall forfeit to the United States, under Title 18, United States Code, Section 982(a)(1), all property, real or personal, involved in the offense, and all property that is traceable to the property involved in the offense.

## 1957 COUNTS

Upon conviction of Counts 49-51, of this Indictment, the defendant, **NICOLE JONES**,

shall forfeit to the United States, under Title 18, United States Code, Section 982(a)(1),

all property, real or personal, involved in the offense, and all property that is traceable to

the property involved in the offense.

A TRUE BILL:

_____

**F O R E P E R S O N**

**DATED: <u>November 21, 2024      </u>**

_____
**REAGAN TAYLOR FONDREN**
**ACTING UNITED STATES ATTORNEY**